**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Melissa E. Pierre-Louis
Michael J. Scimone
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERTRUDE WILLIX, RAMESH SHAH, and VIKAS BHAT, individually and on behalf all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HEALTHFIRST, INC., d/b/a HEALTHFIRST; HF MANAGEMENT SERVICES, LLC, d/b/a HEALTHFIRST; and HEALTHFIRST PHSP, INC. d/b/a HEALTHFIRST <br> Defendants. | No. 07 Civ. 1143 (ENV)(RER) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.    FACTUAL AND PROCEDURAL BACKGROUND.........................................................1

      A.    Factual Allegations .............................................................................................1

      B.    Procedural History .............................................................................................1

      C.    Discovery ............................................................................................................2

      D.    Settlement Negotiations .....................................................................................3

II.   SUMMARY OF THE SETTLEMENT TERMS ...............................................................4

      A.    The Settlement Fund ..........................................................................................4

      B.    Releases ..............................................................................................................4

      C.    Eligible Employees.............................................................................................4

      D.    Allocation Formula.............................................................................................5

      E.    Attorney's Fees and Litigation Costs .................................................................5

      F.    Service Awards....................................................................................................5

      G.    Settlement Claims Administrator .......................................................................6

III.  CLASS ACTION SETTLEMENT PROCEDURE ............................................................6

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS
      APPROPRIATE .................................................................................................................8

      A.    The Settlement is Fair, Reasonable, and Adequate ..........................................10

            1.    Litigation Through Trial Would be Complex, Costly, and Long
                  (*Grinnell* Factor 1) ..............................................................................11

            2.    The Reaction of the Class has Been Positive (*Grinnell* Factor
                  2) ............................................................................................................12

            3.    Discovery Has Advanced Far Enough to Allow the Parties to
                  Resolve the Case Responsibly (*Grinnell* Factor 3)....................................13

4.      Plaintiffs Would Face Real Risks if the Case Proceeded
        (*Grinnell* Factors 4 and 5) .......................................................................14

5.      Maintaining the Class Through Trial Would Not Be Simple
        (*Grinnell* Factor 6) ...................................................................................16

6.      Defendants' Ability to Withstand a Greater Judgment is Not
        Clear (*Grinnell* Factor 7) .........................................................................16

7.      The Settlement Fund is Substantial, Even in Light of the Best
        Possible Recovery and the Attendant Risks of Litigation
        (*Grinnell* Factors 8 and 9) .......................................................................17

B.   The Notice Plan and Award Distribution Process Are Appropriate ...................18

C.   Plaintiffs will seek approval of the FLSA Settlement ..........................................19

CONCLUSION...........................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)....................................................................................15

*Brooks v. Am. Export Indus., Inc.*,
    71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .................................17

*Byrd v. Civil Serv. Comm'n*,
    459 U.S. 1217 (1983).................................................................................................................8

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)................................................17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................................11, 17

*Clark v. Ecolab Inc.*,
    Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL
    1948198 (S.D.N.Y. May 11, 2010).........................................................................7, 8, 10, 19

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)........................................................................................9, 10, 11

*Danieli v. IBM*,
    No. 08 Civ. 3688 (SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) .................................9

*deMunecas v. Bold Food LLC*,
    No. 09 Civ. 00440(DAB), 2010 WL 2399345 (S.D.N.Y. Apr. 19, 2010).............................13

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)................................................................................... passim

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................5, 18

*Goldberg v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................................................11

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........................................................................11, 13, 14

*In re BankAmerica Corp. Sec. Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) ..............................................................................................9

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969)....................................................................14

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................19

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ..................................................................14

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761(CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008)...................9

*In re Traffic Executive Ass'n*,
    627 F.2d 631 (2d Cir. 1980)........................................................................9

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...................................................................8, 13

*Khait v. Whirlpool Corp.*,
    No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ...........6, 7, 8, 9

*Maley v. Dale Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................12

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998).........................................................................9

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 ........................................................................................19

*McMahon v. Olivier Cheng Catering and Events, LLC*,
    No. 08 Civ. 8713(PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)...................13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ..................................................................8, 17

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811(MGC), 2010 WL 476009 (S.D.N.Y. Sept. 22, 2009) ................13

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238 (DLC), 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ................10

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 WL
    2572937 (S.D.N.Y. Jun. 1, 2010) ..............................................................7, 9

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ......14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................8, 9, 10

*Wright v. Stern*,
  553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................................................9

**STATUTES**

29 U.S.C. § 216(b) ........................................................................................2

29 U.S.C. § 213(a)(1)........................................................................................14

**OTHER AUTHORITIES**

29 C.F.R. § 541.200........................................................................................15

29 C.F.R. § 541.500........................................................................................15

Federal Rule of Civil Procedure 23 ........................................................................................10

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)...................8, 9, 11

## INTRODUCTION

Subject to Court approval, the parties have settled Plaintiffs' and class members' claims for significant monetary relief of $7,675,000 plus interest.  The proposed settlement satisfies all of the criteria for preliminary approval under federal law.  Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Swartz Decl."); (2) approve the proposed Notice of Class Action Settlement (attached as Exhibit B to the Swartz Declaration) and direct its distribution; and (3) approve the proposed schedule for final settlement approval.  Defendants do not oppose this motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Factual Allegations

Plaintiffs and the class members are approximately 2000 current and former employees of Healthfirst, Inc., HF Management Services, LLC, and Healthfirst PHSP (collectively "the Healthfirst entities," "Healthfirst," or "Defendants") who have worked as Marketing Representatives in the New York City metropolitan area.  Plaintiffs alleged that the Healthfirst entities, acting as joint employers, violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by improperly classifying them as exempt from the overtime protections of these laws and requiring them to work in excess of 40 hours per workweek without overtime premium pay.  Plaintiffs sought unpaid overtime compensation, unpaid straight time compensation, liquidated damages, interest, and attorneys' fees.  (See Swartz Decl. ¶ 12.)

### B.      Procedural History

In her initial Complaint, Plaintiff Gertrude Willix asserted class and collective action wage and hour claims and individual sexual harassment and retaliation claims against

Healthfirst, Inc.  (Swartz Decl. ¶ 11.)  Defendants answered on August 1, 2007.  (Id.)  Ms. Willix amended her complaint several times, adding additional named plaintiffs, adding HF Management Services and Healthfirst, PHSP as defendants, and alleging a joint employment relationship among the Healthfirst entities.  (Swartz Decl. ¶¶ 13-16.)  On November 20, 2009, after substantial discovery, (see section I.C., *infra*), the parties stipulated to Fed. R. Civ. P. 23 class certification and collective action notice under 29 U.S.C. § 216(b).  The Court certified the class on December 4, 2009, and approved the mailing of a notice, which issued on January 21, 2010.  562 class members affirmatively opted in to the FLSA case in response to the notice.  (Swartz Decl. ¶ 18.)  11 individuals opted out of the Rule 23 NYLL class.  (*Id*.)

**C.   Discovery**

The parties submitted a joint discovery plan on July 25, 2007, which the Court ordered.  (Swartz Decl., ¶ 21.)  The plan bifurcated discovery into two phases.  The first phase covered issues of liability, including whether the outside sales and administrative exemptions to the FLSA and NYLL applied to Plaintiffs.  It also covered the joint employer issue – whether each of the Healthfirst entities "employed" Plaintiffs under the FLSA and NYLL.  The second phase of discovery was to address all other issues, including damages.  (*Id*.)

Early in the first phase of discovery, Plaintiffs interviewed approximately 100 potential plaintiffs and obtained supportive declarations from 44 of them.  (Swartz Decl., ¶ 20.)  Plaintiffs deposed seven Healthfirst corporate officers, including the former Executive Vice President, the Senior Vice President and General Counsel, the Corporate Controller, the Vice President of Human Resources, the Vice President of Sales, the Director of Sales Operations, and the Sales Training Manager.  (Swartz Decl., ¶ 22.)  Plaintiffs also obtained a supportive declaration from Paul Dickstein, the former President of Healthfirst, Inc., HF Management Services, LLC, and Healthfirst, PHSP, Inc.  (Swartz Decl., ¶ 20.)  Defendants deposed all three lead plaintiffs, and

two opt-in plaintiffs.  (Swartz Decl., ¶ 22.)  Both parties had noticed and were ready to take additional depositions when they reached this settlement.  (*Id*.)

The parties also exchanged substantial document discovery.   Defendants produced almost 100,000 pages of documents, including production reports, marketing schedules, employee handbooks, manuals on Healthfirst policies and procedures, communications between Defendants and government regulatory agencies, and almost 8,000 pages of emails and attachments.  (Swartz Decl., ¶ 23.)  Plaintiffs produced more than 2,000 pages of documents including marketing schedules, employee handbooks, paycheck stubs, training materials, and personal notebooks.  (*Id*.)  When the case settled, the parties were set to engage in substantial discovery motion practice in advance of dispositive motions.  (*Id*.)

  **D.**  <u>**Settlement Negotiations**</u>

The parties' first attempt to resolve this case was in April, 2008, when the parties attended private mediation with Carol Wittenberg of JAMS.  The day-long session was unsuccessful as were several weeks of additional negotiations supervised by Ms. Wittenberg. The parties resumed active litigation.  (Swartz Decl. ¶ 17.)

On February 25, 2010, Healthfirst replaced its counsel.  (Swartz Decl. ¶ 19.)  After taking several weeks getting up to speed, Healthfirst's current counsel accepted Plaintiffs' offer to resume settlement discussions on a parallel track with discovery.  (*Id*.)  On May 20, 2010, the parties stipulated to stay discovery in order to concentrate on settlement discussions, which were ultimately successful.  (Swartz Decl. ¶ 24.)  The parties now submit the terms of their proposed settlement for the Court's preliminary approval.  The parties agree that the proposed settlement is fair and reasonable in light of the risks that would attend further litigation.

## II.     SUMMARY OF THE SETTLEMENT TERMS

### A.     The Settlement Fund

Healthfirst has agreed to create a Settlement Fund of seven million six hundred and seventy-five thousand dollars ($7,675,000) ("the Fund").  Healthfirst will deposit half of the Fund into an escrow account within 14 days after the Court issues a preliminary approval order, and the other half of the Fund 14 days after final approval.  (Ex. A, ¶ 3.1(B).)  Interest on these amounts will be added to the Fund.  (*Id.*)  This amount will cover all class claims, all claims for attorneys' fees and costs, all amounts to be paid to Plaintiffs to resolve individual claims, any claims administration costs in excess of $35,000, and any court-approved service payments to Class Representatives.  (Ex. A, ¶ 3.1(A).)  None of the Fund will revert to Healthfirst.  (Ex. A, ¶¶ 3.1(F).)  Healthfirst is responsible for the first $35,000 of the cost of administration in addition to the Fund.  (Ex. A, ¶¶ 2.1.)  In addition to the Fund, Healthfirst is responsible for all employment taxes, including federal and state payroll taxes, the employer's share of the FICA tax, and any federal and state unemployment tax due on the portion of the settlement that is allocated to wages.  (Ex. A, ¶ 3.5(C).)

### B.     Releases

In exchange for the Fund, each participating class member will execute an FLSA and NYLL release by endorsing his or her settlement check.  (Ex. A, ¶ 3.1(B).)  All class members who do not opt out of the settlement will release their NYLL claims.  (Ex. A, ¶ 3.6(C).)

### C.     Eligible Employees

The class consists of all current and former PHSP Marketing Representatives who work or worked for Defendants in New York at any time between March 16, 2001 and October 31, 2007, except for those who have requested to be excluded from the case.  (Ex. A, ¶ 1.4.)

### D.      **Allocation Formula**

According to the Settlement Agreement, class members who do not opt out of the

settlement will be paid pursuant to an allocation formula that is primarily based on the number of

weeks worked during the applicable limitations periods.  Each Rule 23 Class member and FLSA

Class member will receive an individualized settlement amount.  (Ex. A, ¶ 3.4.)  Settlement

awards will be allocated 50% to wages and 50% to interest and liquidated damages.  (Ex. A, ¶

3.5(A).)

### E.      **Attorneys' Fees and Litigation Costs**

Class Counsel will apply for one third of the Fund as attorneys' fees.[1]  Additionally,

Plaintiffs' counsel will seek reimbursement for their reasonable litigation costs and expenses

from the Fund, in an amount not to exceed $125,000.  (Ex. A, ¶ 3.2(A).)  Pursuant to Fed. R.

Civ. P. 23(h) and 54(d)(2), Plaintiffs' counsel will file a Motion for Approval of Attorneys' Fees,

Incentive Awards, and Reimbursement of Expenses along with their Motion for Final Approval

of the Settlement.

The Settlement Agreement is not conditioned on the award of attorneys' fees, and

explicitly states that it is to be considered separately from any application for attorneys' fees.

(Ex. A, ¶ 3.2(B).)  The Court need not decide the attorneys' fees and costs issue now.

### F.      **Service Awards**

In addition to their individualized awards under the allocation formula, Plaintiffs and

class members who actively participated in this lawsuit by providing deposition testimony will

apply for additional payments in recognition of the services they rendered on behalf of the class

---

[1]      This is a typical fee award in the Second Circuit.  *Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) ("counsel is entitled
to one-third of the common fund after deduction of legal costs, which is consistent with the
norms of class litigation in this circuit").

5

("Service Awards").  (Ex. A, ¶ 3.3.)  Plaintiffs will move for Court approval of a Service Award of $30,000 to Gertrude Willix, for approval of Service Awards of $15,000 each to Ramesh Shah and Vikas Bhat, and for approval of Service Awards of $7,500 each to Corpa Monclova and Yin Tung.  (*Id.*)  Plaintiffs will make these motions simultaneously with Plaintiffs' Motion for Final Approval of the Settlement.  Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation."  *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010).

Like the application for attorneys' fees, the application for service awards is separate from the Settlement Agreement.  The settlement is not conditioned on an award of any service payment.  The Court need not decide the service awards issue now.

###      G.      Settlement Claims Administrator

The parties have selected Rust Consulting, Inc. to serve as the Settlement Claims Administrator.  (See www.rustconsulting.com.)  (Ex. A, ¶ 2.1.)  The Defendants will pay up to $35,000 of Rust Consulting, Inc.'s fees and expenses in addition to the Fund; any excess administration fees will be paid from the Fund.  (*Id.*)

## III.      CLASS ACTION SETTLEMENT PROCEDURE

Judicial proceedings under Federal Rule of Civil Procedure 23 have established a defined procedure and specific criteria for settlement approval in class action settlements.  The Rule 23(e) settlement approval procedure describes three distinct steps:

(1)      Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(2)      Dissemination of mailed and/or published notice of settlement to all affected Class members; and

     (3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Khait*, 2010 WL 2025106, at *1; *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 WL 2572937, at *3 (S.D.N.Y. Jun. 1, 2010).

     With this Motion, the Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement, approving Plaintiffs' proposed notice, and authorizing them to send it.

     The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:[2]

     1.     The Settlement Notice will be mailed to Class Members within 14 days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement.

     2.     Class Members will have 60 days after the date the Settlement Notice is mailed to opt out of the settlement or object to it ("Notice Period").

     3.     A final fairness hearing will be held as soon as is convenient for the Court.

     4.     Plaintiffs will file a Motion for Final Approval of Settlement no later than 5 days before the Fairness Hearing.

---

[2]     The parties' proposal presupposes that the Court will preliminarily grant and finally approve the parties' settlement. The parties acknowledge that if this Court or an appellate court denies approval of the settlement, then "the case will proceed as if no settlement had been attempted." (Ex. A, ¶ 2.8(A).)

5.      After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment.  If no party appeals the Court's Final Order and Judgment, the "Effective Date" of the settlement will be 30 days after the Court enters its Final Order and Judgment.

6.      If an individual or party appeals the Court's Final Order and Judgment, the "Effective Date" of Settlement shall be the day after all appeals are finally resolved in favor of final approval and the time for any further appeal, rehearing, or reconsideration has expired.

7.      The Settlement Claims Administrator will disburse settlement checks to the class members, Class Counsel's attorneys' fees and expenses, and the Named Plaintiffs' Service Awards as soon as possible but no more than 14 days after the Effective Date.

This procedure and schedule is typical of settlement agreements in class wage and hour cases. See *Khait*, 2010 WL 2025106, at *1; *Clark*, 2010 WL 1948198, at *4

## IV.   <u>PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE</u>

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied; Byrd v. Civil Serv. Comm'n,* 459 U.S. 1217 (1983) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation."); Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (4th ed. 2002). ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties."  *Torres*, 2010 WL 2572937, at *2 (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988)).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties.  *Torres*, 2010 WL 2572937, at *2; *Newberg* § 11.25.  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).  *See also Danieli v. IBM*, No. 08 Civ. 3688 (SHS), 2009 WL 6583144, at *4-5 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005).  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Khait*, 2010 WL 2025106, at *4; *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).  *See also*  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

*See also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761(CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

Where the settlement was achieved through experienced counsels' arm's-length negotiations, then, "[a]bsent fraud or collusion," "[c]ourt[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Clark*, 2010 WL 1948198, at *4.

Preliminary approval is the first step in the settlement process. It simply allows notice to issue to the class and for class members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.

A.    **The Settlement is Fair, Reasonable, and Adequate**.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To evaluate procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores*, 396 F.3d at 116; *D'Amato,* 236 F.3d at 85. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal citation omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238DLC, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," (*id*. at § 11.26), it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;  (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

## 1.      **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception.  The total class consists of more than 2,000 class members,

more than 560 of whom affirmatively joined the case, bringing claims under the FLSA and the NYLL.  After more than three years of litigation, the first stage of discovery was still in progress when the case settled.

Further litigation would cause additional expense and delay.  Just before settling, the parties were engaged in extensive discovery and on the verge of motion practice.  Cross motions for  summary judgment briefing would have followed first-phase discovery.  The second stage discovery would have addressed damages, including factual questions about the number of hours worked by class members and legal questions about how to value them.  After additional summary judgment briefing, a lengthy and complex trial would have consumed tremendous time and resources for all parties and the Court.  Any judgment would have likely been appealed, further extending the litigation.  This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  Although notice of the settlement has not yet issued to the class, word of the settlement has spread.  Plaintiffs' counsel has taken calls from dozens of class members, all of whom have reacted positively to the settlement.  (Swartz Decl. ¶ 27.)  Additionally, all 3 named Plaintiffs support the settlement, as evidenced by their signatures on the Settlement Agreement. (Swartz Decl. ¶ 30.)  Plaintiffs who have spoken to other class members have reported favorable reactions.  (Swartz Decl. ¶ 31.)  Although the Court should

12

more fully analyze this factor after notice issues and class members are given the opportunity to opt out or object, it weighs in favor of preliminary approval.

> ### 3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

The parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin*, 391 F.3d at 537.  Here they have.  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  *In re Holocaust Litig.*, 80 F. Supp. 2d at 176 (quotation marks omitted).  The parties' discovery here meets this standard.

To date, the parties have taken 12 depositions; have produced and reviewed almost 100,000 pages of documents, including 7,954 pages of emails, and have exchanged detailed interrogatories and requests for admissions.  (Swartz Decl. ¶¶ 22, 23.)  The parties are well positioned to evaluate the merits.  *See deMunecas v. Bold Food LLC*, No. 09 Civ. 00440(DAB), 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010) (preliminarily approving settlement where settlement resulted from "extensive, arm's length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions"); *See McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *1 (S.D.N.Y. Sept. 22, 2009) (preliminarily approving settlement where settlement resulted from "extensive, arm's length negotiations" facilitated by "an experienced mediator" ); *Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to

13

Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").  This factor also weighs in favor of preliminary approval.

### 4.    Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5).

Although Plaintiffs' case is strong, it is subject to considerable risk.  "Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (*internal quotation marks omitted*).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages.  Liability under the FLSA and NYLL would remain uncertain in light of the two exemption defenses asserted by Healthfirst.  Even if Plaintiffs prevailed on liability, the extent of the class members' damages remains largely unexplored, as this issue has been reserved for the second stage of discovery.  Ultimately, this issue would have to be resolved at trial.  Proceeding through each phase of litigation thus poses significant risks for Plaintiffs.

Healthfirst has claimed that Plaintiffs are exempt under the FLSA's and NYLL's exemption for outside sales employees, and under the exemption for administrative employees. 29 U.S.C. § 213(a)(1).  Both defenses present risks for Plaintiffs.

The FLSA exempts "outside sales" employees from its minimum wage and overtime requirements.  An "outside sales" employee is one whose primary duty is "making sales" or

14

"obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and . . . who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."  29 C.F.R. § 541.500.  The threshold issue in this multipart test is whether the employee "makes sales" or "obtains orders . . . for which a consideration is paid."  *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 470-471 (S.D.N.Y. 2008).  Whether Plaintiffs do so is a central contested issue in this litigation.

Defendants also claim that Plaintiffs are exempt under the administrative exemption.  29 C.F.R. § 541.200.

In addition to liability questions, proving damages, including the amount of time class members spent performing uncompensated tasks, would present a significant hurdle for Plaintiffs.  Healthfirst would likely contend that many class members' allegations that they performed uncompensated tasks are not credible because they could have performed those tasks during the compensated workday.  In the absence of documentary evidence that would establish the amount of time Plaintiffs spent visiting applicants at their homes, proving damages would ultimately depend on a jury's credibility determination.

While Plaintiffs believe that their claims are strong, their counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates this uncertainty.  This factor weighs heavily in favor of preliminary approval.

### 5. **Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)**.

The risk of maintaining the class status through trial is also present.  Although the parties initially stipulated to class certification in November 2009, Defendants' counsel have indicated that they still consider class certification to be an open issue, and that they would likely move for decertification because individualized issues make class certification inappropriate.

The prospect of a motion for decertification, and for a possible interlocutory appeal under Fed. R. Civ. P. 23(f), means that additional rounds of briefing would, at the very least, forestall the resolution of this case.  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

### 6. **Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)**.

Plaintiffs have no evidence as to whether Healthfirst could afford to pay a greater judgment.  Healthfirst operates in an industry that is currently undergoing tremendous change.  Recent healthcare reforms at the federal level could affect Healthfirst's business in unforeseen ways.  It is simply too early to know what role Healthfirst will play in this new healthcare environment.

Even if Healthfirst continues to be an important and profitable player in the health insurance industry, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9).  While this factor may prove to favor settlement in the future, it is not determinative.

16

7.      **The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**.

Plaintiffs' counsel has determined that this case presents significant risks that militate in favor of substantial compromise.  Healthfirst has agreed to settle this case for a substantial amount, $7.675 million, plus interest.  (Ex. A, ¶ 3.1(A).)  The resulting average per-class member settlement amount is approximately $2,500.00 plus interest.  Unlike many class action settlements, which require class members to return a claim form after preliminary approval in order to collect their payout, every member of the Healthfirst class will receive a check.  (Ex. A, ¶ 3.4(B).)  There is no requirement that workers do anything to be paid.

The settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.  The Court should preliminarily approve it.  "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974).  "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Officers for Justice*, 688 F.2d at 628; *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead, 'there is a range of

17

reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of hypothetically larger amount years down the road,'" settlement is reasonable under this factor.  *See Gilliam,* 2008 WL 782596, at *5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004)).

Healthfirst will fund the settlement by transferring a substantial portion of the settlement amount to an interest-bearing account shortly after the Court grants Preliminary Approval. (Swartz Decl. ¶ 26.)  The class will continue to earn interest until the settlement administrator distributes the funds.

*     *     *

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant its preliminary approval.

**B.      The Notice Plan and Award Distribution Process Are Appropriate.**

The Settlement Agreement provides that notice will be mailed individually by the claims administrator to the last known address of each class member within 14 days of preliminary approval.  (Ex. A, ¶ 2.3(B).)  The claims administrator will perform a skip trace and attempt one re-mailing for any class member whose notice was returned as undeliverable.  (Id.)  This notice

18

procedure satisfies the due process requirements of Rule 23.  *See  In re Michael Milken &*

*Assocs. Sec. Litig.*, 150 F.R.D. 57, 59 (S.D.N.Y. 1993) (class notice "need only describe the

terms of the settlement generally.").

As discussed above, the notice will contain information about how to exclude oneself or

object to the settlement.  Class members will have 60 days from the date of mailing to submit

opt-out requests or to comment on or object to the settlement.  (Ex. A, ¶ 2.4(A)); (Ex. B, ¶¶ 12,

17.)  Class members will not be required to complete a claim form to participate in the

settlement.  (Ex. A, ¶ 3.4(B).)  Within 14 days of final approval of the settlement or, if there is an

appeal of the grant of final approval, within 14 days after all appeals are resolved in favor of

final approval, the claims administrator will simply send class members their payments.  (Ex. A,

¶ 3.1(C).)

### C.      Plaintiffs Will Seek Approval of the FLSA Settlement

Plaintiffs will seek approval of the settlement of the FLSA claims separately from their

Rule 23 claims. The standard for approval of an FLSA settlement is lower than for a Rule 23

settlement because an FLSA settlement does not implicate the same due process concerns as

does a Rule 23 settlement. *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.

1984) (explaining that FLSA collective actions do not implicate the same due process concerns

as Rule 23 actions because, under the FLSA, parties may elect to opt in but a failure to do so

does not prevent them from bringing their own suits at a later date); s*ee also Clark*, 2010 WL

1948198, at *7. When Plaintiffs file their motion for final approval of the settlement, they will

seek approval of the FLSA settlement.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated:  September 24, 2010
        New York, New York

                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**

                                        /s/ Justin M. Swartz
                                        Justin M. Swartz

                                        Justin M. Swartz
                                        Rachel Bien
                                        Melissa E. Pierre-Louis
                                        Michael J. Scimone
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000
                                        Facsimile:  (212) 977-4005
                                        **Attorneys for Plaintiffs and the Class**